CourT OriginaL CoPy

# FORM TO BE USED BY A PRISONER IN FILING A CIVIL RIGHTS COMPLAINT

## UNITED STATES DISTRICT COURT FOR THE DISTRICT OF NEW JERSEY

Darius GiTTens, Pro Se

**COMPLAINT**

(Enter above the full name of the plaintiff in this action)

V.

Mildred ScholTz, eTal

**Civil Action No. _____**

(To be supplied by the Clerk of the Court)

Please Find all defendants
LisTed in ATTached (33) Page ComPlainT DaTed 1/31/2018

(Enter the full name of the defendant of defendants in this action)

---

## INSTRUCTIONS; READ CAREFULLY

1.     This complaint must be legibly handwritten or typewritten, signed by the plaintiff and   subscribed to under penalty of perjury as being true and correct.  All questions must be answered concisely in the proper space on the form.  Where more space is needed to answer any question, attach a separate sheet.

2.     In accordance with Rule 8 of the Federal Rules of Civil Procedure, the complaint should contain (1) a short and plain statement of the grounds upon which the court's jurisdiction depends, (2) a short plain statement of the claim showing that you are entitled to relief, and (3) a demand for judgment for the relief which you seek.

3.     You must provide the full name of each defendant or defendants and where they can be found.

4.     You must send the original and one copy of the complaint to the Clerk of the District Court.  You must also send one additional copy of the complaint for each defendant to the Clerk. Do not send the complaint directly to the defendants.

5.     Upon receipt of a fee of $400.00 (a filing fee of $350.00, and an administrative fee of   $50.00), your complaint will be filed.  You will be responsible for service of a separate summons and copy of the complaint on each defendant.  See Rule 4, Federal Rule of Civil Procedure.

6.     If you cannot prepay the $400.00 fee, you may request permission to proceed in forma pauperis in accordance with the procedures  set forth in the application to proceed in forma pauperis.  See 28 U.S.C. §1915.  (If there is more than one plaintiff, each plaintiff must separately request permission to proceed in forma pauperis.)

7.     If you are given permission to proceed in forma pauperis, the $50.00 Administrative Fee will not be assessed.  The Clerk will prepare and issue a copy of the summons for each defendant.  The copies of summonses and the copies of the complaint  which you have submitted will be forwarded  by the Clerk to the United States Marshal, who is responsible for service.  The Marshal has USM-285 forms you must complete so that the Marshal can locate and serve each defendant.  If the forms are sent to you, you must complete them in full and return the forms to the Marshal.

## QUESTIONS TO BE ANSWERED

1a.    Jurisdiction is asserted pursuant to (CHECK ONE)

   ✓   42 U.S.C. §1983 (applies to state prisoners)

   ____  Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics, 403 U.S. 388 (1971) and 28 U.S.C. § 1331 (applies to federal prisoners)

   If you want to assert jurisdiction under different or additional statutes, list these below:

   _____

1b.    Indicate whether you are a prisoner or other confined person as follows:

   ___ Pretrial detainee

   ___ Civilly-committed detainee

   ___ Immigration detainee

   ✗ Convicted and sentenced state prisoner

   ___ Convicted and sentenced federal prisoner

   ___ Other: (please explain)_____

2.    Previously Dismissed Federal Civil Actions or Appeals

If you are proceeding in forma pauperis, list each civil action or appeal you have brought in a federal court while you were incarcerated or detained in any facility, that was dismissed as frivolous or malicious, or for failure to state a claim upon which relief may be granted. Please note that a prisoner who has on three or more prior occasions, while detained in any facility, brought an action or appeal in a federal court that was dismissed as frivolous or malicious, or for failure to state a claim upon which relief may be granted, will be denied in forma pauperis status unless that prisoner is under imminent danger of serious physical injury. See 28 U.S.C. § 1915(g).

a.    Parties to previous lawsuit:

Plaintiff(s): _____

_____

Defendant(s): _____

_____

b.    Court and docket number: _____

c.    Grounds for dismissal:  ( )    frivolous    ( ) malicious

( )    failure to state a claim upon which relief may be granted

d.    Approximate date of filing lawsuit: _____

e.    Approximate date of disposition: _____

If there is more than one civil action or appeal, describe the additional civil actions or appeals using this same format on separate sheets.

3.    Place of Present Confinement? South Woods State Prison

4.    Parties

(In item (a) below, place your name in the first blank and place your present address in the second blank. Do the same for additional Plaintiffs, if any.)

a.    Name of plaintiff: Darius Gittens

5.   I previously have sought informal or formal relief from the appropriate administrative officials regarding the acts complained of in the Statement of Claims on page 6.

X̶ Yes       ____ No

If your answer is "Yes," briefly describe the steps taken, including how relief was sought, from whom you sought relief, and the results.

Please Read Attached 33 Page Cirtified Complaint Dated 1/31/2018

If your answer is "No," briefly explain why administrative remedies were not exhausted.

6.   Statement of Claims

(State here as briefly as possible the facts of your case. Describe how each defendant violated your rights, giving dates and places. If you do not specify how each defendant violated your rights and the date(s) and place of the violations, your complaint may be dismissed. Include also the names of other persons who are involved, including dates and places. Do not give any legal arguments or cite any cases or statutes. If you intend to allege a number of related claims, number and set forth each claim in a separate paragraph. Use as much space as you need. Attach a separate sheet if necessary.)

Please Read "Claims For Relief" In The Attached 33 Page Cirtified Complaint



8.   Do you request a jury or non-jury trial? (Check only one)

(X) Jury Trial ( ) Non-Jury Trial

I declare under penalty of perjury that the foregoing is true and correct.

Signed this 31 day of January , 20 18

Signature of plaintiff*

(*EACH PLAINTIFF NAMED IN THE COMPLAINT MUST SIGN THE COMPLAINT HERE. ADD ADDITIONAL LINES IF THERE IS MORE THAN ONE PLAINTIFF. REMEMBER, EACH PLAINTIFF MUST SIGN THE COMPLAINT).



UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

Darius Gittens, Pro se,                    :
                        Plaintiff
        V.                                 :

MILDRED SCHOLTZ, individually and          :
officially as Warden of Burlington
County, New Jersey Adult Detention         :
Facility; CAPTAINS MATTHEW LEITH
and W. MCDONNELL and J. LARKINS,           :
each individually and officially
in Burlington County, New Jersey           :
Adult Detention Facility; T. BLANGO
and P. BLANGO, exact twin brothers.        :
Lieutenants, each individually and
officially in Burlington County,           :
New Jersey Adult Detention Facility;           42 USC 1983
BURLINGTON COUNTY, NEW JERSEY BOARD  :         Complaint
OF CHOSEN FREEHOLDERS, each                    Docket #_____
individually and officially; MARY    :
ANN O'BRIEN, BRUCE GARGINO, AIMEE
BEIGARD, JOSEPH DONNELLY, JOANNE      :
SCHWARTZ; and the NEW JERSEY
DEPARTMENT OF CORRECTIONS GARY        :
LANIGAN, COMMISSIONER; MARCUS
HICKS, DIRECTOR OF OFFICE OF COUNTY   :
SERVICES; DARCELLA SESSOMES,
ASSISTANT COMMISSIONER, DIVISION OF   :
PROGRAMS AND COMMUNITY SERVICES;
CORRECTION OFFICER T. CASE AND        :
UNKNOWN EMPLOYEE; officially and
individually;                         :

                    Defendants  :

## Jurisdiction

     This is a Civil Action authorized by 42 U.S.C. section
1983, to redress the deprivation, under color of state law,
of rights secured by the Constitution of the United States.
This court has jurisdiction under 28 U.S.C. section 1331 and
1343 (a)(3). Plaintiff seeks Declaritory Relief pursuant to
28 U.S.C. section 2201 and 2202. Plaintiff's claims for
Injunctive Relief are authorized by 28 U.S.C. section 2283 and
2284 and Rule 65 of the Federal Rules of Civil Procedure.

1

Additional jurisdiction is 42 U.S.C. 1997e (e) and Americans with Disabilities Act 29 U.S.C. 794, 42 U.S.C. section 12101-12213 and Pendant New Jersey Statues and Constitution.

### Venue

1. The United States District Court, District of New Jersey is an appropriate venue under 28 U.S.C. section 1391 (b) (2) because it is where the events giving rise to these claims occurred.

### Parties

2. Plaintiff Darius Gittens, was at all times mentioned herein concerning Burlington County Detention Center, a detainee confined within that "Jail" and at all times mentioned herein concerning (receipt) of O.P.R.A. documents; and filing grievances concerning D.O.C. transport officer (T. Case), was an inmate under the control of defendant Gary Lanigan in his prison(s) at all times in the State of New Jersey, Department of Corrections.

3. Defendant Mildred Scholtz, is the Administrator (Warden) of the Burlington County Adult Detention Center located in Mount Holly, New Jersey and she is legally responsible for said detention center, and the welfare, conditions of confinement over detainees at that center, and at all times relevant to that "jail" she was the administrator thereof.

4. Defendants, Matthew Leith, McDonnell, and J. Larkins, are all Burlington County Adult Detention Center employees with the rank of Captain, and at all times mentioned in these complaint were so employed. They control every aspect of welfare and conditions of confinement at the "jail".

5. Defendants, twin brothers, T. Blango and P. Blango, are all Burlington County Adult Detention Center employees with the rank of Lieutenant, and at all times mentioned in this complaint were so employed. They work directly with Captains Leith, McDonnell and Larkins, and control every aspect of welfare and conditions of confinement at the "jail."

6. Defendants, Burlington County, New Jersey Board of Chosen Freeholders, Mary Anne O'Brien, Bruce Garganio, Aimee Beigard, Joseph Donelly and Joanne Schwartz, were at all times mentioned in this complaint seated and responsible for the upkeep and conditions of confinement and the welfare of all detainees held at the "Jail", A/K/A "Burlington County Adult Detention Center."

7. Defendant, Gary M. Lanigan, is and was at all times mentioned in this complaint the Commissioner of the New Jersey

2

Department of Corrections and responsible for overseeing all
prisons and detention centers in the State of New Jersey. He
is responsible for the conditions of confinement and or oversight
of such conditions at all prisons and detention centers—
"jail"—at Mount Holly, New Jersey

8. Defendant, Marcus Hicks, Director of office of county
services is and was at all times mentioned in this complaint
responsible for oversight, inspection, reinspections and
statutory compliance of regulations that statutory law mandates
are followed at each detention center, and Burlington County
Adult Detention Center, "jail". His employment is at Central
Office, New Jersey Department of Corrections, working directly
(with) and (under) defendants Lanigan, and Sessomes.

9. Defendant, Darcella Sessomes, Assistant Commissioner,
Division of Programs and Family Services, is and was at all
times mentioned in this complaint responsible for oversight
of "Office of County Services", and all inspections,
reinspections and conditions of confinement as is defendant
Hicks, over the Burlington County Adult Detention Center "jail".
Her employment is under the control and at Central Office, New
Jersey Department of Corrections working directly with and under
defendant Lanigan.

10. Defendant, T. Case, is and was at all times mentioned
in this complaint a corrections officer employed by New jersey,
Department of Corrections transportation unit and was assigned
with a fellow (Name unknown) corrections officer to transport
defendant from Burlington County Adult Detention Center on
11/16/2016 at approximately 9:15am to transport the plaintiff
to C.R.A.F. prison and is the person who forces plaintiff to
leave all legal materials at the Burlington County Adult
Detention Center on said date, 11/16/2016, without any procedural
or substantive due process of law and against United States
Supreme Court Proscriptions and mandates.

11. Defendant, unknown, who defendant T. Case called on
cell phone at approx. 9:15am on 11/16/2016, is believed to be
in a supervisory position over defendant T. Case; upon
information and belief, is involved in a conspiracy with
defendant T. Case and or other unknown persons to refuse to
allow legal materials to remain with inmates transferred from
all county jails to C.R.A.F. and did the same ongoing refusal
to transport inmates legal materials to plaintiff.

12. Each defendant is sued in his or her officail capacity
and individually and they did at all times mentioned in the
complint act under color of law of the State of New Jersey,
in direct violation of statutory and constitutional laws and
civil rights laws of the State of New Jersey while they were
acting under color of such law.

3

## Prologue

13. This complaint will address unlawful and constitutionally volitive conditions and confinement while at the Burlington County, New Jersey, Adult Detention Facility. Contextural background parameters now follow for an understanding, albeit brief, of the relevant history that underpins this instant lawsuit.

14. Contemporary standards of decency is the foundation that our law makers rely upon in the criminal justice system when fostering regulations that create conditions of confinement that are moral, lawful and constitutionally appropriate when confining persons in adult detention facilities and prisons.

15. These standards of decency are the product of 145 years of criminal justice refinement by legislatures, judicial decree and correctional associations. Wardens, superintendents, sheriffs, commissioners, sociologists. psychiatrists; and law makers from commissions that have all together made the American Correctional Association (A.C.A.). When building (planning), staffing and regulating Adult County Detention Centers. the A.C.A. is the place to find most every answer.

16. Standards for adult correctional institutions 3rd and 4th editions set forth evolved and constitutionally acceptable standards. They were developed in 1974 and slightly modified in 1996. This slight modification was called "performance standards". In order to monitor compliance of each area of performance a facility after being vetted was then Accredited if that facility opted for being accredited.

17. The American Association manual of Accreditation Policy and Procedure, developed in 1979, evolved to require "performance standards" to monitor facilities that have been Accredited. These performance standards require each facility to maintain actual "performance" going forward once such facility has been certified "Accredited", performance must be continuing compliance to the standards cited Supra.

18. In 1976, New Jersey Legislature created "New Jersey Department of Corrections Act" whereby the Commissioner of Corrections would oversee promulgation of rules and regulations for county Adult Detention Facilities and Prisons, N.J.S.A. 30:B1-1-24. These rules and regulations were N.J.A.C. 10A and 10A:31. These provide for conditions of confinement that are legal and constitutional, (and at all times mentioned herein), well settled.

19. In 1989, the current Burlington County Adult Detention Facility was built, following a series of ongoing civil rights complaints against defendants for illegal and unconstitutional conditions of confinement at the former facility caused by

4

overcrowding became moot with this new facility.

20. The new facility was designed for 168 single cells in 1989. Then in 1995, a second "bunk" added additional 168 detainees, 2 per cell which was 48 square feet of unencumbered floor space. N.J.A.C. 10A:31 requires a "minimum of 25 square feet per detainee of unencumbered floor space. Then around 2000 defendants (predecessors) and current defendants forced a third detainee into a single cell, each and every day 20-21 1/2 hours each day, where each detainee had only 8 square feet of unencumbered floor area. These conditions had a snowball effect on every aspect of day to day conditions of confinement at the facility; conditions such as no bedding exchange. violence, cold showers, no grievances, no grievance processing, no problem resolution of any kind, legal mail diverted, filthy cells, no cleaning of cells, mice in kitchen, food intentionally prepared that was unfit to eat, black mold in showers, shower roof falling, roof flooding areas of facility, intentional withholding of basic clothing, bedding, not classifying mentally ill detainees, etc., are some of the conditions this complaint will address, defendants have acted as if they are not subject to established rule of law, or consequences for violating it.

21. Plaintiff was forced to live for 333 days in the Burlington County Adult Detention Facility in a cell with 2 other detainees for 20-21 1/2 hours each day under illegal and unconstitutional conditions of confinement and every complaint made by plaintiff and other detainees were never responded to. This complaint now follows:

## FACTS

22. Now comes the plaintiff, Darius Gittens, who is currently pro se, and does here to fore swear and certify this entire complaint from its first trough to its last paragraph to be true and correct to his own personal knowledge, unless stated "upon information and belief", and if so stated as to these/those if any, are true and correct upon his reasonable belief so qualified.

23. On 12/16/2015, plaintiff was ordered detained in the Burlington County Adult Detention Facility (hereinafter called "jail") to await trial for 3rd degree burglary and theft offenses and sentencing for same.

24. Upon entering jail plaintiff was required to trade clothing whereupon he received only some of the mandatory minimum clothing and bedding required, N.J.A.C. 10A:31 (herein after called "required").

25. Of the required issue plaintiff was given sheets, towel, 2 uniforms (orange), and pillow case. Not given was pillow, rule book, underware that were required.

26. Thereafter on 12/16/2015, plaintiff was seen by a nurse at a medical screening upon intake and informed nurse that he had chronic conditions, destroyed knees and destroyed shoulders that were preoperative and being treated presently for extreme chronic pain.

27. Plaintiff gave this intake nurse full medical history with full medication history, based on plaintiff's medical conditions he had been disabled and was on social security SSI since 3/19/2014.

28. Plaintiff asked if his medical records held by Social Security and Gate Keeper insurer Amerigroup would be ordered and was told that Defendant Scholtz and defendants chosen freeholders expressly prohibit accessing medical records of pre-existing conditions.

29. Plaintiff insisted on receiving a medical pass or other medical authorization placing him in a cell that had a bottom bunk and located so he would not have to climb any avoidable stairs climbing or climb to a top bunk. He was told that Defendant's Larkins or McDonnell were the only employees at jail who could authorize a medical cell placement.

30. On 12/17/2015, plaintiff informed defendant Larkins at classification what the intake nurse said he said we have 3 inmates in each cell and make no special cell placements for any one.

31. Plaintiff remonstrated to defendant Larkins that he could not climb to top bunk or climb stairs due to disability in knees and shoulders and chronic pain climbing a top bunk would cause.

32. Defendant Larkins assigned plaintiff to E unit, cell 209, where he was forced into a cell to a mattress on the floor since cell had 2 detainees in top and bottom bunk already.

33. Plaintiff was forced to sleep on floor mattress that was 9 inches from toilet bowel.

34. Plaintiff had urination on his sheets, blanket and his legs by careless cell mates.

35. Plaintiff upon flopping down to floor mattress would on rising have to slither and squirm to stand up. This activity caused extreme physical pain that was the most extreme pain that he had ever experienced since suffering the injuries that caused his disability. This pain in both shoulders and knees made it unbearable pain to raise and lay.

36. Plaintiff suffered everyday in great pain and continually begged defendants Larkins, McDonnell, T. Blango,

P. Blango and even defendant Scholtz: all these continual begging
was done in person and continually begged to be placed in a
cell on the bottom bunk. Each request was denied.

37. Plaintiff on the day he came into jail was on prescribed
pain management of 5x30mg Oxicodone, 2x10mg Methadone and 3x100mg
of  Neurontin, each day and had been on this medication for
extreme chronic pain for 8 years; extensive MRI's and X-rays
show why.

38. The only pain medication Defendant Scholtz allowed
medical subcontractors to give Plaintiff was Neurontin 2x300mg
per day and Ibuprofen 400mg.

39. Plaintiff saw many horrific conditions of, confinement
and after asking other detainees questions about these conditions
and who or how to complain started keeping a log book of the
day to day constitutionally volitive conditions of confinement
and which jail employees were responsible for failing to correct
them. Specific dates will follow infra.

40. Plaintiff had no extra clothing materials that could
be utilized to stuff the pillow case that he was given so that
he as forced to sleep on a mattress that was (1) inch thick
with no pillow for 333 days.

41. Not having a pillow additionally caused pain and
inability to properly sleep that was additional pain and
sleeplessness that was separate and distinct from (expected)
discomfort of condition of confinement a detainee would feel
who had access to the pillow; illegally denied plaintiff.

42. In addition to Plaintiff's pre-existing knee and
shoulder condition was a neck condition and lumbar condition
that caused its own separate pain, not to be confused with
destroyed rotator cuffs chronic pain. Pain causing additional
sleep loss.

43. When Plaintiff has access to a pillow, his neck and
shoulders are able to be positioned to allow sleep and pain
levels that allow sleep.

44. Plaintiff begged in person and or writing to Defendants
Larkins, McDonnell, Scholtz, T. Blango, P. Blango, Freeholders
and Lanigan for a pillow to put in the issued pillow case and
was ignored, specific dates (from logs) will follow infra.

45. Plaintiff in each begging made orally in person or
in writing explained the additional physical pain not having
a pillow was causing; these qualified complaints were all
ignored. Specific dates (from logs) will follow infra.

46. After being in the jail 333 days Plaintiff carefully

noted each volitive condition of confinement that occurred,
everyday about 90% of the time, unless qualified differently
in this complaint; a clear pattern of these conditions is listed
thereto below:

1) 3 detainees per cell designed for 1, 2 in bunk beds,
   1 on floor, 20-21 1/2 hours per day
2) cells kept extremely cold, approximately 58 degrees
3) only 1 working shower 50-60 degrees October-February
4) boiler(s) not maintained and broken for years
5) multiple areas of systemic roof flooding
6) no cell clean up, no cell cleaning supplies
7) no bedding exchange, no washing bedding
8) kitchen infested with mice and droppings
9) mice coming inside cells every night
10) no mail box for outgoing legal mail
11) no mail box for complaints or grievances
12) no grievance forms given
13) no grievance forms processed
14) outgoing complaints, mail being diverted
15) only 1 hour per week law library being canceled
16) control #1 systematically diverting mail
17) cold food being served about 5 days per week
18) food intentionally under/over cooked
19) food not fit to eat with no slat/spices
20) no pillows, or underwear provided
21) cells filthy with mice droppings and roaches
22) cells having a foul smell by toilet
23) no shaving equipment most of the time
24) no pens, paper, or envelopes to write given
25) approximately 2 days per week milk spoiled
26) staged cleanups for D.O.C. inspections
27) D.O.C. inspectors never inspecting cells
28) not separating violent/mentally disturbed
29) disciplinary housing unit not following its rules
30) no pest control

47. On 12/21/2015, defendant Scholtz, came to E housing
unit. When she reached plaintiff's cell (#209) she was with
one of the "Blango Twins". I asked her to stop and speak with
me; she did so.

48. I asked at that time, Defendant Blango and Scholtz
to look at me on floor and asked her why as she allowing me
to be forced to sleep by toilet on the floor with no room to
move around and that I was disabled and in great deal of pain.
She told me to write her about my complaints. Date:12/21/2015.

49. I also asked for "extended law library access" she
looked at defendant Blango and told him "give him extended
access". She then walked off. That was the last time she came
to E unit while I was there. Date:21/21/2015.

8

50. On 12/21/2015, I wrote defendant Scholtz describing my disabilities and the pain sleeping on floor and without a pillow was causing my neck and shoulders. I mailed the 3 page letter in a manilla envelope (paper, pen and envelope loaned to me by a detainee).

51. I mailed that envelope by handing it to officer passing by he said he would take it to control #1 and put it in Defendant Scholtz's box. She never responded. This was on 12/21/2015.

52. On 12/28/2015, at 8:15pm, social worker called "Vallery" was on E unit. At that time plaintiff explained how much pain and how much mental stress being forced to live with 2 other detainees with no room to exercise or even move around my cell more than 18 hours each day. She agreed to mail 3 letters in defendant Larkin's "Captain's Box".

53. Plaintiff handed Vallery 4 page detailed letter on 14 inch paper complaining of his conditions of confinement causing extreme pain, loss of sleep and mental stress. This letter was dated 12/28/2015. Also sent with this letter was letter 1 page on 14 inch paper requesting grievance forms (since all officers refused to give any grievance forms out) and the 3rd letter 1 page on 14 inch paper complained about my letter to defendant Scholtz was never answered and why was there (no mail box).

54. On 12/29/2015, defendant Larkins called plaintiff down to officers desk by stairs under direct view of (E-100) camera and before fellow correction employees Sgt. Benet and Officer "Mack" and made  violent gesture with his right hand crushing and wadding paper. He then stated "I have your letters, I don't read this shit, it's a waste of time what do you want." Plaintiff explained cold water showers, no grievances, sleeping on floor in great pain. He looked at one of the employees and said get him grievances and Sgt. Benet stated "I am not calling maintenance to fix the hot water you need to call your congressman and contact county freeholders, ask them to fix the hot water." Plaintiff was told to go.

55. Plaintiff contacted his family and Ms. Lacovaro and Attorney Anthony Aldorasi, complaining of great pain and mental anguish/stress being forced to sleep on floor in filthy smelly cell that had piss and dirt, etc. Ms. Lacovaro was told to contact (Lieutenant Finklea), who instructed plaintiff to contact defendant McDonnell with any complaints. Which plaintiff does infra.

56. Plaintiff after writing over 18 separate complaints (on all sorts of borrowed paper and pen) that defendant Scholtz never responded to, wrote a 13 page letter to Captain (defendant) McDonnell with 2 page cover letter and Defendant Scholtz with 2 page cover letter and copy of letter to defendant McDonnell

9

attached; all written 12/31/2015.

57. These complaints were very explicit in describing the constitutionally volitive conditions of confinement. Plaintiff and other detainees were suffering from.

58. Also, 2 separate signed petitions that described the conditions of confinement suffered by plaintiff and the other detainees were sent to Defendants Scholtz and McDonnell and handed to Attorney Anthony Aldorasi, he also forwarded these complaints/ petitions no answer by any defendants were received.

59. Then one night on 2/1/2016, defendant McDonnell stopped by plaintiff's cell, cell 209 and handed him 2 blank grievance forms. All this is recorded on camera (E-200).

60. Note worthy here is that all areas are under a million dollar digital computerized state of the art camera system with voice and visual recording hardware and software; thus all times. Dates plaintiff mentioned in this complaint are all recorded with tamper proof remote storage. The court and jury will have objective proof beyond log books and testimony that will show horrific conditions of confinement alleged in this complaint.

61. Plaintiff made copies of the grievances. 150 were made and he handed over 120 out to detainees to file grievances.

62. Plaintiff filed 6 separate grievances on the conditions of confinement, and on legal visit by public defender Karin Thek. They were smuggled out of jail for copying and forwarding to Attorney Anthony Aldorasi who then forwarded them to Defendants Scholtz and McDonnell, then mailed back to plaintiff he then mailed them to Defendants Scholtz and McDonnell.

63. A description of each of the 6 grievances are listed hereto:

1) Grievance #1 dated 2/2/2016. Form with 9 attached pages. Addressed Grievance matters. Violated statute 10A:31-14.5. Violated A.C.A. standard's 4-4284.

2) Grievance #2 dated 2/4/2016. Form with 3 attached pages addressed plaintiff's specific suffering being forcedto sleep on floor with 2 detainees in bunk beds. violated statute 10A:31-3.6 (b),(c),(g) and (i). Violated A.C.A. standard's 4-4132.

3) Grievance #3 dated 2/4/ 2016. Form with 4 attached pages addressed being forced to shower in ice cold water or forego hygiene. Statue violated 10A:31-3.7(a), violated A.C.A. standard's 4-4139.

10

4) Grievance #4 dated 2/4/2016. Form with 2 attached pages addressed deprivation of general library/reading material. Violated statute 10A:31-26.5 (a),(b),(c) and (d). Violated A.C.A. standard's 4-4505.

5. Grievance #5 dated 2/6/2016. Form with 4 attached pages addressed jail food/nutrition. Violated statute 10A:31 subchapter 10. Violated A.C.A. standard's 4-4316, 4-4317 and 4-4318.

6) Grievance #6 dated 2/8/2016. Form with 4 attached pages addressed law library access denial. Violated statute 10A:31-15.1, 2 and 3. Violated A.C.A. standards 4-4276.

64. Plaintiff became very angry and distraught with increasing intensity over the span of the 333 days he was forced to live in a cell that he could not physically move around in. Physical pain and mental pain acted together with all the volitive conditions of confinement, was a punishment he had never suffered before.

65. Plaintiff has spent over 15 years in many prison and many jails and never experienced such physical pain as described supra.

66. Plaintiff at time of writing this complaint 9/27/2017, is in a cell with another prisoner with 48 square feet unencumbered floor space and sitting on bottom bunk with little pain physically and no mental pain. This prison S.W.S.P. complies with A.C.A. standards.

67. Plaintiff has a medical "bottom bunk" authorization' that means I sit down at an 18 inch height and roll into and out of my bed without pain. No slithering or squirming.

68. Plaintiff is in prison convicted and being severely punished, his sentence is 8-17 years. None of this punishment causes physical pain or anger or a distraught mind. A.C.A. standards are followed.

69. Plaintiff has no roaches, mice, room to move, can clean cell, has sheets washed, has a pillow has good food, hot shower, access to grievances, complaints, access to administration, access to law library, no piss being sprayed on him, cell temp regulated, 2 detainees per cell/ This is lawful detention. No vomit smells in cell.

70. Additional facts that support specific patterns of misfeasance and malfeasance in the forms of documents mailed to defendants are identified as follows:

11

A. 13 Pages sent to Warden (defendant) Scholtz
describing specific illegal treatment dated
2/1/2016, mailed as all other "mail" by handing
to E unit officer; in this case these documents
were handed to Officer McMillan-at 3:37pm on
2/3/2016-who stated she was bringing directly
to Control #1 for placement in the Administrator's
box. (Administrator is the same as warden). These
documents consisted of 3 page letter 9:40am, 1
page emergency letter 2:04pm, 1 page preamble letter
4:10pm and 5 other pages. These were shown to camera
on 2/1/2016, no answer

B. 4 page letter to Sgt. Davis, dated 3/1/2016, 6pm-6am
supervision with 2 page affidavit by inmate Don
Cortes, ID#106101 dated 2/26/2016. These concern
loss of most of plaintiff's personal property by
Officer Wagner on 2/11/2016. This was handed to
Sgt. Davis, no answer.

C. 8 page emergency petition signed by 35 of the 54
inmates concerning food. This was dated, signed
and was mailed 4/11/2016. No answer.

71. On 2/11/ 2016, defendant McDonnell retaliated by issuing
a (specious) disciplinary report that he used to access my copies
of complaints and logs, while placing me into punitive
segregation. C Unit cell 204.

72. As soon as defendant McDonnell had placed the handcuffs
on me he stated "your annoying me with your complaints", then
he took me to "C" unit into pre hearing confinement across the
hall in the disciplinary unit.

73. I was not allowed a council substitute to review
evidence (recording of E-100 camera 2/1/2016; and 2/11/2016
recording of E200 camera 4:55-5:10pm) and to interview witnesses
that overheard the conversation between me and McDonnell
2/01/2016, in violation of substantive procedural due process,
N.J.A.C. 10A:31-16.12(g). I was unable to collect and present
evidence.

74. The hearing officer is P. Blango. The twin brother
of T. Blango, who claimed to witness incident in initial report
it is unethical to sit on hearing where brother claims to be
witness. This violates N.J. ethics law.

75. The disciplinary report states: "the inmate was blocking
the E-200 rear camera with papers"

76. Plaintiff was denied right to call any witnesses no
reason given he asked for defendant McDonnell, social worker
Vallery and inmates in 109 cell in violation of Due process

12

and statute N.J.A.C. 10A:31-16.12(h).

77. When plaintiff was brought to the hearing he had documents to produce that he wanted to place in evidence for consideration by hearing officer. He was brought in shackles and hand cuffs in full view of camera he asked to present documents and was then flanked by 2 officers who pressed their bodies right up to each side of plaintiff they said you can't have any documents placed in the record.

78. Plaintiff denied the charge, he stated that he never blocked any camera and wanted his witnesses and that film be reviewed by "council substitute" and defendant P. Blango said we don't allow witnesses and plaintiff pointed out that he just saw defendant McDonnell in next office on duty but was told to shut up.

79. There after plaintiff was brought back to his pre hearing confinement cell C-204 and then received paper that stated he was guilty. A review of form 259-A, revised 7/98 part 1 entitled (Burlington County Corrections Adjudication of disciplinary charges) states at paragraph 12 the following:

80. "On Feb. 1, 2016, inmate was told not to put papers up to block [to] camera. On Feb 11, 2016, inmate was observed putting papers back up to lock the camera at the E200"

81. The only evidence shown to the plaintiff was described in 75 Supra, so what "alleged" evidence was relied upon by Defendant P. Blango as descried in paragraph 80 supra? Plaintiff was never allowed documents or witnesses and no witnesses or documents were ever in the 10 minute hearing. Clearly plaintiff's rights were utterly violated. N.J.A.C. 10A:31-16.14(a) 3,4 and 5.

82. Plaintiff appealed the illegal decision pursuant 10A:31-16.(b) and received a pro forma response by defendant Matthew Leith on 2/24/2016 that he alleged to have rendered 2/20/2016.

83. Plaintiff perfected a notice of appeal original and 4 copies and mailed to New Jersey Superior Court Appellate Division, on 2/24/2016. No answer ever was received from court.

84. Plaintiff also submitted O.P.R.A. requests to defendant Scholtz for copies of N.J.A.C. 10A: 31-3.6 (b),(c),(g) and (i) exemptions (forms 31-100) for years 1989-2016, he submitted these O.P.R.A., requests 2/28/2016. No answer was received.

85. Plaintiff received 15 days punishment based upon defendant McDonnell's 2/11/2016 misbehavior report.

86. While Plaintiff was punished for 15 days he was further

13

punished even beyond what is allowable under any circumtance that does not involve an emergency.

87. Plaintiff was illegally punished by not allowing him, any exercise outside of cell required by statute N.J.A.C. 10A:31-17.8, and well settled constitutional case law.

88. Additionally Plaintiff was not allowed any clean exchange of clothing or sheets, and denied all access to law library access and general reading books.

89. On 2/17/2016 3 boxes and an envelope was brought to my cell in C unit, cell 204. These boxes/envelope came from my attorney Levi Huebner. This was about 20 inches of law work.

90. On 2/20/2016, officer Wells ordered me from cell 204 and I was handcuffed with my face pushed to the wall outside my cell. About 5 seconds later. A huge gush of water was flowing from my cell. All my legal work was drowned. This was no accident, it was intended to destroy all my legal work. I was placed in cell 205.

91. An attempt to punish me for the intentional flooding of my cell was done when I received a disciplinary report for breaking the fire sprinkler.

92. Officer Wells wrote me up for setting off the fire sprinkler that he intentionally set off. But a different hearing officer, on 2/22/2016, dismissed the charge. The fire department came into the facility. They saw my legal work totally flooded as did Officers E. Cleary, Walsh, Sergeant P. Morris, and Officer Davis.

93. While still in punishment, I was called down to social worker emergency for incoming phone from Elsie Sanchez, to tell me my fiancee Patricia Lacovaro had died. The same day defendant placed me in pre-hearing confinement, 2/11/2016.

94. I forgot to mention that the 3 boxes of legal mail referred to supra as "priority mail" tracking # 2308 0440 0000 0518 (9165), and (9516) and 9523 + 4th item a Fed Express tracking # as EI522197745 US; these tracing #'s prove when these boxes of legal mail and envelope of legal mail were received by plaintiff.

95. At this point, it should be noted that the only enjoyment was listening to radio station NPR with the radio that as sent to me only a few weeks prior to having Officer Wagner without due process seize it, never to return it as indicated in paragraph 70(b) supra.

96. The conditions of confinement at the jail caused plaintiff great fear for his safety as it became common knowledge

14

E unit was used to house violent gang members from the Bloods, especially from Glouster County.

97. On 3/18/2016, at approximately 7:30pm (in the (I Unit) were the walls are painted dark blue/gray to create depression) a detainee unclassified-committed suicide. Defendant Scholtz issued standing orders, that hid from news media all mention of suicide. This created a great deal of fear and anxiety within plaintiff.

98. Defendant Leith was personally advised by the plaintiff about his particular medical problems and pain by being forced to sleep on the floor. Plaintiff asked him to look into cell 204 to see how dirty it as and how nauseating the smell of old and new vomit was, but refused to take any action. This meeting occurred in March 2016.

99. During 333 days plaintiff saw defendants many many times and each time he complained in specific intelligent manner that made his specific conditions of confinement well known to them. They took no action to stop plaintiff's volitive conditions of confinement.

100. Please note that the digital camera system at the jail was maintained by "information technology communications division".

101. On 8/3/2016, Defendant McDonnell came by plaintiff's cell E-204 and plaintiff asked him why he still had 3 in his cell when cell 201 and 208 had only 1 detainee in a cell, he said, "because you like to write complaints." This was at 8:40pm.

102. Plaintiff wrote letters to Attorney General, Freeholders, Burlington County Times newspaper and defendants Lanigan, Sessomes, and Hicks complaining of the conditions of confinement and never received any reply.

103. Through direct personal experience and through direct personal face to face communication that plaintiff had, he has a list of jail correction officers who have stated knowledge of the culture of lies and cover up and greed that has contributed to plaintiff's and other detainees unnecessary conditions of confinement these corrections officers have stated to plaintiff that they will be available to testify at civil rights trial for plaintiff and pretrial depositions concerning jail.

104. Plaintiff has extensively researched all the facts and law and through this he learned that the jail was coloring and or upon information and belief out right falsifying official jail documents to central office of the New Jersey Department of Corrections. Thus prolonging the illegal conditions of confinement for plaintiff and the other detainees at jail.

105. The documents which plaintiff asserted in paragraph 104 supra, are those identified as jail inspections, request for exemptions, grants of exemptions, reinspections and interdepartment communications addressing, these matters found as (statutory) codified rule N.J.A.C. 10A:31-1.5(c).

106. Defendants by their employee John Falvey, Esq., have possession of exaustive documents that support plaintiff's claims of illegal conditions of confinement and used same documents to obfuscate (substantive) review of the illegal conditions of confinement at jail.

107. John Falvey, Esq., is an attorney employed by defendant Lanigan, as in house counsel to control O.P.R.A. access to and (form) of (records) that (expose) defendant Sessomes, Hicks and Lanigan's (actual) knowledge of and (acquiescence)  to ongoing illegal conditions of confinement at the jail (well prior) to and specifically 12/16/2015 -10/27/2016.

108. John Falvey has provided plaintiff, as of December 2017, with well over 1200 documents pursuant New Jersey Open Records Act; and identified and (withheld) more than 2000 pages that are proofs of misfeasance and malfeasance (patterns) between defendants Lanigan, Hicks, and Sessomes and defendants Scholtz et al, at jail, (that continued illegal conditions).

109. Defendants who are Freeholders are currently and at times relevant to this complaint and the conditions of confinement complained of here, have been directly responsible for continuing  or refusing to correct prior freeholders – decades long – intentional withholding critical monies that the jail needed to: repair and maintain boilers, roof system, mechanical infrastructure and overcrowding the jail.

110. Defendants who are Freeholders as cited in 109 supra were additionally responsible for refusing to approve jail requests for funding necessary to purchase goods and services to support the proper lawful running of the jail in areas – (10A:31, through its mandated rules) – of cell cleaning supplies, library books, law library materials, adequate living conditions for mentally ill detainees, etc.

111. Defendants, who are freeholders cited in 109 Supra (knowing) that illegal conditions were occurring for over (10) years at the jail that has been mentioned in this complaint, took no action to correct these conditions, were deliberately indifferent to the proximate constitutionally volitive conditions of confinement resulting therefrom and the decay of the jail that they were charged with maintaining.

112. So that plaintiff is clear as to facts that support this complaint as attaches to defendants freeholders; please take notice the jail is (provided) or not (provided) material

16

sustenance by control of funding, the law directs them to properly allocate, to maintain the jail.

113. Plaintiff upon learning that defendants freeholders were withholding funding to the jail began writing letters to them explaining in exact detail the conditions of confinement described supra; (3) letters that were never answered.

114. On 5/25/2016, defendant McDonnell smiled as he stated, "Did you think your complaint letters to freeholders were going to change anything for you here?" This occurred at church. When I asked him how he knew, he only smiled.

115. It became clear to plaintiff that the jail was monitoring and probably diverting complaints attempting to expose the illegal conditions of confinement at the jail.

116. Please take notice that I never told anyone at jail that I wrote or was going to write complaint letters to the defendant(s) freeholders, nor were they shown to camera.

117. Plaintiff was not allowed to access the desk or shelf inside the cell as the two other detainees were using the amenities and (3) of the cellmates had sever psychological problems, they were violent and plaintiff was in continual fear of being assaulted inside his cell.

118. Plaintiff suffered a great deal of physical and mental pain, and stress that has left a lasting imprint on his physical and mental state of being as a direct result of the illegal unconstitutional cumulative conditions of confinement at the jail 12/16/2015-11/16/2016.

119. On 10/27/2016, plaintiff was sentenced to New Jersey Department of Corrections, for 17 years for theft of jewelry in excess of $75,000.

120. On 11/16/2016, defendant T. Case came to the jail to transport plaintiff to New Jersey Department of Corrections Assignment Facility known as C.R.A.F.

121. Upon entering jail, defendant T. Case, looked at plaintiff and (4) 12 inch high tied bundles of legal materials and stated "you cannot take any of your legal work, not one piece of paper." He stated he was "following orders."

122. Just prior to plaintiff being forced into the C.R.A.F. transport van, defendant T. Case while inside driver section of transport van used his cell phone to confer about plaintiff's legal materials and after that cell phone call he stated "NO! he gets (none) of his legal work." This was witnessed by (4) inmates inside the van and defendant T Case's partner.

17

123. Defendant T. Case and (unknown defendant) he called on his cell phone 11/16/2016, on or about 9:15am, did act under orders, or in concert with same, to deprive plaintiff of (all access to all written legal material) without any just or lawful regulation, plaintiff has learned that D.O.C. transport officers have a practice of illegal withholding legal materials without official authorization.

124. When defendant T. Case and unknown person withheld all access and possession of said legal materials they deprived plaintiff all access to written private logs, legal work product, trial discovery, evidence, phone numbers, addresses, personal letters, complaints and grievances and evidence for civil law suit 42 USC 1983; law books.

125. Plaintiff wrote grievances specific to aforementioned legal work and withholding of it as described in paragraphs 120-124 herein with New Jersey State Prison, East Jersey State Prison, South Woods State Prison and defendant Gary Lanigan, and his agents and "corrections ombudsman"; all refused to do anything whatsoever.

126. At trial on this matter (withheld legal materials) plaintiff will show exaustive, well articulated complaints showing times and dates and place and specific legal materials being withheld, and every person (so informed) acted as if in a conspiracy to hide the matter, further extending the deprivation.

127. Unknown to plaintiff and defendants T. Case, Gary Lanigan and unknown employee of D.O.C., Judge Charles A. Delehey, on 11/22/2016, ordered jail not to throw out any of the legal materials and to forward to plaintiff once he was classified; research by plaintiff shows that a pattern of denial of all legal materials by C.R.A.F. transport did and to this day continue to occur.

128. Despite being classified on or about 11/22/2016, and being sent to New Jersey State Prison by 11/23/2016, defendants without any due process and in violation of lawful un-appealed Superior Court Judge order, still refused to provide plaintiff any access to his legal materials.

129. On 11/23/2016, defendant Scholtz, knowingly and willfully disregarded Judge Delehey's 11/22/2016, court order to send plaintiff the aforementioned legal materials as described in paragraph 128 and refused to forward said legal materials to either New Jersey State Prison, East Jersey State Prison or South Woods State Prison; (court order# 12-2986).

130. On June 6, 2017, (197) days of illegal unconstitutional withholding of aforementioned legal materials ended when plaintiff received the aforementioned legal materials in the

mail room of South Woods State Prison; sent by public defender.

131. Plaintiff also filed O.P.R.A. requests for records of defendant Lanigan that authorized withholding legal materials; his agent, Attorney John Falvey, refused to provide a single document showing it to be lawful for defendants to withhold legal materials as has occurred here.

132. The mental stress and headaches suffered by plaintiff by prolonged withholding of legal materials is a punishment and extreme cruelty in excess and separate to the otherwise lawful sentence and punishment envisioned by Judge Charles A. Delehey (sentence) handed down 10/27/2016, under indictment # 13-06-00659-I

133. Plaintiff contacted corrections ombudsman, Defendant Lanigan by letters and by electronic "kiosk" mail and attorney general seeking the immediate return of aforedescribed legal materials and all his efforts were ignored and once specifically addressed as in the case of ombudsman; who pretended they had no jurisdiction; even though facts will prove otherwise.

134. All efforts to have defendants return said legal materials occurred starting November 16, 2016, and ending 6/6/2017.

135. When Defendant Scholtz, refused to follow Judge Delehey's 11/22/2016, order the New Jersey Burlington County Public Defender's Office Attorney Anthony Aldorasi III, and Appellate Section Attorney Jodi Ferguson, were able to access the jail to pick up said legal materials.

136. Defendant Scholtz intended and did succeed in depriving plaintiff of access to his legal materials after being ordered by Judge Delehey to provide such access.

137. Plaintiff possesses official Department of Corrections documents–that in addition to those 2000 withheld documents (see paragraph 108 supra)–signed by defendants Scholtz, Lanigan, Sessomes and Hicks, that (show) personal knowledge of the illegal jail conditions going back over 5 years.

138. Defendants Scholtz, Lanigan, Sessomes and Hicks, acted as a unified team that functioned to rubber stamp documents so that they would give appearance of scrupiously following procedure while actually actively as a team (perpetuating in perpetuity) the same pretend jail inspections, reinspections, rule exemptions with supporting memorandums, forms and documents utilized by their predecessors (to deceive).

139. This complaint by signed documents, belonging to defendants, alleges: (systemic corruption), born of status quo, greed, union pressure, all at the direct detriment of the

19

plaintiff and plaintiff's class.

140. Plaintiff is not an attorney, but states here that he has carefully reviewed entire facts he knows and witnesses he believes will be deposed and by documents he anticipates access directly, or yet to be assigned counsel will be accessed too directly, all together it is probable that the New Jersey and or United States, Attorney General, (may) find extant sufficient evidence upon which criminal R.I.C.O. charges would be appropriate against defendants Scholtz, Lanigan, Sessomes and Hicks if not even more persons unnamed herein, yet to be identified.

141. Plaintiff believes paragraph #140 to be true because every written complaint made against the jail was never answered; a systemic practice at the jail.

142. Further, complaints made to United States Department of Justice, (civil rights division) (A.D.A.) 3 pages on 2/29/2016 and again on 8/3/2016, (3 page copy of 2/29/2016 complaint) with 5 page letter of additional evidence naming all persons at jail and New Jersey Department of Corrections who were violating my rights under A.D.A. These were never responded to either.

143. Plaintiff's disability as alleged in paragraphs 26-118 was intentionally ignored, and when he complained was retaliated against by prolonged mistreatment by defendants Scholtz, McDonnell, Larkins and Leith, not to mention (fake) disciplinary charges.

144. Defendants Lanigan, Sessomes, Hicks, Scholtz, McDonnell, Larkins and Leith, were all made aware orally and or in writing, and by digital camera of complaints. grievances and complaints and grievances being thrown away or diverted and took no action of any kind beyond their individual and or collective activities to (conceal) the complaints, grievances.

145. On or about 1/8/2016, Attorney Anthony Aldorasi III, visited plaintiff at the jail and advised plaintiff to allow him to keep a copy of signed petition (signed by 36 detainess in E-unit) and at that time took possession of it and informed plaintiff that he knew defendant McDonnell very well and he felt certain plaintiff's (safety) would be questionable if he submitted more complaints.

146. Attorney Aldorasi promised to personally deliver the complaint to defendant McDonnell after plaintiff explained to him some one was blocking any complaints from being answered); he told plaintiff he had personally (delivered) the 12/31/2015 complaint, (see paragraph 56).

147. The petition Attorney Aldorasi processed on

20

petitioner's behalf was signed by 36 detainees on the plaintiff's
unit. (E Unit). Each signee and plaintiff wrote in exact complete
detail restating the facts mentioned in this complaint that
comprise those unconstitutional, illegal conditions of
confinement that were suffered by the class of detainees
plaintiff was a part of.

148. From intake at medical on 12/17/2015, through to
present (this section of complaint 12/22/27). Plaintiff has
been in the custody of either defendants Scholtz or Lanigan,
continuously, and each defendant possesses the medical history
of plaintiff's disabilities.

149. Each defendant: Scholtz, Lanigan, Sessomes, Hicks,
McDonnell, Larkins and Leith have attended professional training
seminars that directly informed them that cumulative ongoing
condition of confinement volitive of A.C.A. core jail standards
and statutory N.J.A.C. 10A:31 minimum standards would violate
the constitutional rights and dignity of detainees at the jail.
Such conditions that punished me.

150. Defendants freeholders and Scholtz have acted against
the lawful interests of plaintiff, plaintiff's class and public
of Burlington County when they planned out and then in
furtherance of the plan (conspiracy) did overload the design
capacity of the jail by making deals with other New Jersey County
Adult Detention facilities whereby for money they would house
detainees from those jails then manipulate documents to hide
their activities and illegal conditions at jail.

151. Plaintiff will prove at trial what he alleges are
facts in paragraphs 149 and 150 supra.

152. Each defendant—restating paragraphs 149 and
150—know/knew with their training and learned on the job
experience the physical and mental damages their acts and
omissions described in this complaint would do to plaintiff's
detriment; and the class of detainees at the jail similarly
situated juxtaposition to plaintiff. Which will be shown to
be genuine privations and hardship over an extended period of
time.

153. Defendant Lanigan controlled all finance at New York
City Riker's Island, for 9 years and is an expert in manipulating
and understanding every single component of running a county
jail. Defendant's Scholtz's jail.

154. Defendant Lanigan has special training that makes
him one of the foremost experts in the United States, that allows
him to know when inspection reports, reinspection reports (show
patterns) of continual misfeasance and or non-feasance at
defendant Scholtz's jail.

21

155. Defendant Lanigan is (shown) by documents he possesses (required by New Jersey Statutes). To have made intentional well thought out (tactical decisions) to utilize his expertise in (assisting) defendant Scholtz (and her predecessors) to participate in producing official Department of Corrections and state and county (Burlington) documents that are (manipulated) with intent of hiding the pattern of overcrowding and (resulting) illegal conditions of confinement at the jail. (He personally signed his approval.)

156. Defendants Sessomes, Hicks and other unknown employees at Central Office of New Jersey Department of Corrections also acted together with defendant Lanigan as stated in paragraph 155 as if fully restated here. (They personally signed their approval).

157. Defendants McDonnell, Larkins and Leith have been vested absolute authority by defendant Scholtz in the day to day operations of the jail that gave them the power to stop the illegal conditions of confinement alleged in this complaint. 12/16/2015-11/16/2016.

158. Defendants McDonnell, Larkins and Leith acted outside the intent of the statutory authority governing their day to day operation of the jail by refusing to correct cumulative illegal conditions alleged in this complaint.

159. All defendants took (oaths) to follow laws of the State of New Jersey and follow the constitutions of New Jersey, New Jersey Civil Rights and (United States Constitutions).

160. All defendants have (violated) the oaths described in supra., and have violated the public trust and violated ethics laws of the State of New Jersey and Department of Corrections. See facts paragraphs 159-162.

161. Defendants T. Blango and P. Blango are given absolute authority by defendants Scholtz, McDonnell, Larkins and Leith in specific areas of the jail concerning day to day operations, conditions of confinement.

162. Defendants T. Blango and P. Blango worked in concert with defendants McDonnell, Larkins and Leith allowing and continuing aforementioned illegal conditions of confinement and caused privations of punishment.

163. Defendants Lanigan, Sessomes, Hicks, Scholtz, McDonnell, Larkins, Leith, P. Blango and T. Blango each individually and or collectively had direct knowledge that complaints of conditions of confinement at jail filed by required statutory grievance procedure established at jail were "All" (intentionally) suppressed. Leaving plaintiff no redress.

22

164. Plaintiff was provided documents by O.P.R.A. request that will show a jury "direct knowledge/participation" by official D.O.C. documents fully supporting the facts asserted in paragraph 163 supra.

165. Inside the 1200 O.P.R.A. documents provided by John Falvey is proof that (inspections) done at the jail by defendants(s) Lanigan, Sessomes, Hicks employees Lt. Glenn Eisinger, Christel Jackson-Lee, Lt. Tara N. Thomson, Mark Farsi, deputy commissioner and Lt. Samuel Beaver, were (falsified) to hide the constitutionally volitive conditions of confinement for years 2011, 2012, 2013, 2014, 2015 and 2016.

166. Upon information and belief the jail and D.O.C. has been illegally conducting jail operations and inspections as described in paragraph 165 supra since approximately 1994; discovery will establish these asserted facts for the jury.

167. This complaint while being very specific to facts, some of which, unique to only (plaintiff's) conditions of confinement; (overall) there is extant those conditions of confinement, that clearly effect thousands of past, present and future detainees at the "jail", in addition to plaintiff.

168. The (class) so effected by the illegal conditions of confinement this complaint speaks to are (predominantly) lacking funds, education and are fluid. Also the question of law and facts are (common) to my claims, (laws) and (facts) and the defenses to such claims are common between this plaintiff and such class and defendants.

169. Where applicable, (certain requested relief sought infra) will be seeking among compensatory and punitive damages, injunctions (that this court may find) are common questions also "predominate" over such class and that a class action is (superior) to other methods of handling the controversy.

170. Plaintiff asks this court to allow the jury to weigh this complaint in the light most consistent with the (truth the facts asserted herein are enveloped by) plaintiff's complaint is (eclipsed) by thousands of detainees past, present and future whose rights are best protected by certifying this complaint as a class action: and the assignment of an attorney that has the means to represent the class.

171. On 12/19/2017, my criminal appeal attorney–(indictment # 13-01-0659, appeal docket # A-1868-16)–public defender assistant Raquel Y. Bristol sent me the original copy of the (7) page 1/8/2016, class action complaint cited supra at paragraphs 145, 146 and 147, that public defender Anthony Aldorasi, III, took possession of at the jail as discussed supra; (on or about 1/8/2016).

23

172. That said, (7) page complaint dated 1/8/2016, was withheld all this time from plaintiff; now plaintiff will list those detainees that signed the complaint, all (36) of them, that gave notice to the jail their intent to be part of a 42 USC 1983 complaint asserting claims that their 8th and 14th amendment rights were violated by the condition of confinement extant at the jail. These (36) detainees are listed on the (7) page complaint aforementioned:

| Detainee name | jail number | days in jail as of 1/8/2016 |
|---|---|---|
| Darius Gittens | 103639 | 23 |
| James Couch | 102020 | 375 |
| Don M. Cortes | 106101 | 80 |
| Mark Begley | 108281 | 192 |
| Jeffery Bradford | 45994 | 105 |
| Anthony Jones | 36982 | 180+5 years |
| David Clarke | 107309 | 180 |
| Jose Vazquez | 107505 | 372 |
| Christopher Eller | 94994 | 728 |
| Jahyquiriz Ramos | 108363 | 168 |
| Juan Valencia | 106749 | 549 |
| Daniel Martinez | 107023 | 489 |
| Karmer Earley | 108068 | 240 |
| Brian Robinson | GC00518 | 180 |
| Kodei Lawton | 103772 | 106 |
| Freddie Woodard | 108471 | 150 |
| Kyle Crosby | 107569 | 360 |
| Toney Holliday | 99441 | 1945 |
| Abdullah Sheriff | 106252 | 683 |
| Roy Isola | GC00528 | 180 |
| Howard Jones | 39725 | 23 |
| Charles Jackson | 107464 | 180 |
| Jamaal Tyus | 109080 | 40 |
| Joseph Elsey | 96780 | 45 |
| Jeffrey Adams | GC00542 | 115 |
| Tyrone Aziz | 31739 | 760 |
| James McGrath | 10857 | 150 |
| Willie Hayman | 19269 | 330 |
| Lamar Keese | 78483 | 150 |
| Rodney Coney | 83885 | 365 |
| David Finlaw | GC0041 | 700 |
| Edward McTaque | 108978 | 180 |
| Tyrell Fitpatrick | 93687 | 485 |
| Michael Mimms | 103984 | 120 |
| Marcus Garvan | 107179 | 575 |
| Daniel Martinez | 107003 | 485 |

## Claims for Relief

173. Plaintiff realleges and incorporates by reference paragraphs (1) through to (173) as if fully restated as facts for each of the following claims for relief:

24

(A) <u>Failure To Protect</u>: Defendant Lanigan under clear (unequivocal) statutory (laws) that are specifically enacted as a tool of oversight, enforcement and a tool for investigation where (uncorrected illegal), unconstitutional (cumulative) conditions of confinement are extant at county adult detention facilities as provided in New Jersey Statute (<u>Department of Corrections Act of 1976</u>) 30:B1-6(h). Given this authority but when provided specific actual notice of the illegal conditions of confinement at Burlington County Adult Detention Center took no action to bring those illegal conditions to an end and require the "jail to comply with N.J.A.C. 10A chapter 31, and then together with Defendants Sessomes and Hicks did then cover up those conditions year after year; specifically 2015 and 2016 did cause plaintiff's damage in violation of the First, Eight and Fourteenth Amendments to the United States Constitution.

(1) Supplemental (pendent) jurisdiction: New Jersey Constitution Article 1. Sections 5 and 7 were violated under the same predicate articulated in (A) supra.

(2) Supplemental (pendent) jurisdiction: <u>New Jersey Civil Rights Act</u> (C.R.A), N.J., Stat. Ann. 10:6-2(a),(b),(c),(d),(e) and (f) were violated and applicable under the same predicate in (A) supra.

(3) Supplemental (pendent) jurisdiction: New Jersey Statute <u>official misconduct</u> N.J.S., 2C:30-2(6) as violated and applicable under the same predicate as (A) supra.

(4) Supplemental (pendent) jurisdiction: New Jersey Statute <u>Crime of Pattern of Official Misconduct</u> N.J.S. 2C:30-7(a), was violated and applicable under the same predicate as (A) supra.

(B) <u>Deliberate Denial of All Legal Materials</u>: Defendants T. Case and unknown employee did with malice and afterthought and without any New Jersey or Federal law and without exigent circumstance and or in a conspiracy with unknown New Jersey State Department of Corrections employees, forced plaintiff to abandon every single piece of legal material in his possession with express intention of permanently obstructing, such legal materials possession without any due process in violation of the United States Constitution First and Fourteenth Amendments.

(1) Supplemental (pendant) jurisdiction: same as (A), (1) supra.

(2) Supplemental (pendent) jurisdiction: same as (A), (2) supra.

(C) <u>Failure to Protect Ongoing Deliberate Denial of all Legal Materials</u>: Defendant Lanigan after becoming directly informed that Central Transportation Unit was and is continuing to obstruct plaintiff and other prisoners possession of legal

25

materials being transferred from Burlington County Detention
Centers and other county detention centers to C.R.A.F., knowing
that he had not issued and that no predecessor issued lawful
authorization to so obstruct legal materials possession by
transferring detainees to C.R.A.F., took no action to protect
the continuing systemic pattern of such legal materials
obstruction without any due process of law did violate the United
States Constitution First and Fourteenth Amendments.

(1) Supplemental (pendent) jurisdiction: same as (A),(1)
supra.

(2) Supplemental (pendent) jurisdiction: same as (A),(2)
supra.

(3) Supplemental (pendent) jurisdiction: same as (A),(3)
supra.

(4) Supplemental (pendent) jurisdiction: same as (A), (4)
supra.

(D) <u>Failure to protect</u>: Defendant Scholtz did foster
cumulative conditions of confinement for 20-21 1/2 hours each
day with (3) detainees per cell with less than (9) square feet
of (unencumbered) space to walk in cell per detainee, together
with aforementioned conditions of confinement caused plaintiff
to suffer genuine privations and hardships that was for such
a long duration that plaintiff was unconstitutionally punished
as an unsentenced detainee and cruel and unusual punishment
for that time he was deemed sentenced in violation of the Eight
and Fourteenth Amendments to the United States Constitution.

(1) Supplemental (pendant) jurisdiction: same as (A), (1)
supra.

(2) Supplemental (pendent) jurisdiction: same as (A), (2)
supra.

(3) Supplemental (pendent) jurisdiction: same as (A), (3)
supra.

(4) Supplemental (pendent) jurisdiction: same as (A), (4)
supra.

(E) <u>Deliberate denial of all legal materials access</u>: in
violation of Judge Delehey's 11/22/2015 court order by Defendant
Scholtz violated the United States Constitution First and
Fourteenth Amendments.

(1) Supplemental (pendent) jurisdiction: same as (A), (1)
supra.

(2) Supplemental (pendent) jurisdiction: same as (A), (2)

26

supra.

(3) Supplemental (pendent) jurisdiction: same as (A), (3) supra.

(4) Supplemental (pendent) jurisdiction: <u>Judicial</u> <u>Contempt</u> N.J.S. 2C:29-9.(a).

(F) <u>Deliberate indifference</u>: Defendants Scholtz, Leith, McDonnell, Larkins, T. Blango and P. Blango, all had actual knowledge of Plaintiffs being forced to sleep on the floor without a pillow for extensive period of time which caused plaintiff to be in great physical distress and long sleepless periods which caused great mental anguish and were deliberately indifferent to the pain suffered by the plaintiff in violation of the Eight and Fourteenth Amendments to the United States Constitution.

(G) <u>Americans</u> with <u>Disability</u> <u>Act</u>: Defendants Scholtz, Leith, McDonnell, Larkins, T. Blango and P. Blango were given direct Notice that Plaintiff was disabled receiving SSI since 2014 and unable to function in most use of shoulders and knees did refuse to make any effort to make sleeping housing to reasonably accommodate his disability which resulted in plaintiff being forced to sleep on the floor without pillow in great physical pain and mental anguish in violation of the Americans with Disability Act.

(H) <u>Retaliation</u>: Defendant McDonnell issued a false misbehavior report in (retaliation) against plaintiff's efforts to complain about illegal cumulative conditions of confinement that was causing plaintiff and many detainees unnecessary pain and genuine privations and hardships, this violated the United States Constitution First and Fourteenth Amendments.

(I) <u>Unconstitutional disciplinary hearing</u>: Defendant P. Blango, disciplinary hearing officer intentionally conducted an unconstitutional hearing on retaliatory charges by allowing no witnesses, no documentary evidence, presided at hearing upon which his own twin brother T. Blango was alleged to have witnessed the alleged misbehavior and at conclusion of hearing placed in the disposition a statement purporting to be material facts in support of guilt (not) found (anywhere) in the record. When taken together, plaintiff's hearing violated clearly established procedural rights and safeguards that violated plaintiff's rights under the United States Constitution Fourteenth Amendment.

(J) <u>Cover up review of illegal disciplinary hearing</u>: Defendant Leith, was presented on appeal, by plaintiff facts establishing the documents comprising the record-(The face of the record)-that the hearing was clearly not compliant with N.J.A.C. 10A: Chapter 31 and violated (clearly established)

27

minimum constitutional requirements, nevertheless he affirmed
the illegal hearing in violation of procedural and substantive
due process of law. This violated the United States Constitution
Fourteenth Amendment.

(K) Illegal disciplinary Confinement: Defendants Scholtz,
Leith, McDonnell, Larkins, T. Blango and P. Blango each directly
agreed and did create standing orders to be followed by all
disciplinary housing unit "C" officers (prohibiting) all out
of cell exercise, all clean clothing, all law library access,
all access to reading books and law books during plaintiff's
confinement at that disciplinary unit in violation of the United
States Constitution First and Fourteenth Amendments.

(L) Failure to Protect: Defendants Lanigan, Sessomes and
Hicks after being directly informed of the unconstitutional
disciplinary confinement, of detainees at the disciplinary unit
did sign off on those conditions taking no action to protect
plaintiff and other detainees from those illegal conditions
and deprivations in the disciplinary unit in violation of the
United States Constitution First and Fourteenth Amendments.

(1) Supplemental (pendent) jurisdiction: same as (A), (1)
supra.

(2) Supplemental (pendent) jurisdiction: same as (A), (2)
supra.

(3) Supplemental (pendent) jurisdiction: same as (A), (3)
supra.

(4) Supplemental (pendent) jurisdiction: same as (A), (4)
supra.

(M) Deliberate indifference: Defendants Board of Chosen
Freeholders, Mary Ann O'Brien, Bruce Garganio, Aimee Beigard,
Joseph Donnelly and Joanne Schwartz, intentionally withheld
funding and oversight at Burlington County Adult Detention Center
("Jail"), with reckless disregard and deliberate indifference
to horrific cumulative conditions of confinement at the "jail"
that has caused serious genuine privations and hardships for
plaintiff and thousands of detainees and sentenced prisoners
in violation of the United States Constitution First, Eight
and Fourteenth Amendments.

(1) Supplemental (pendent) jurisdiction: New Jersey Civil
Rights Act (C.R.A.), N.J. Stat. Ann. 10:6-2(a),(b),(c),(d),(e)
and (f) were violated and applicable under the predicated in
(M) supra.
(2) Supplemental (pendent) jurisdiction: New Jersey
Constitution Article 1 sections 5 and 7 were violated under
the same predicate articulated in (M) supra.

(3) Supplemental (pendent) jurisdiction" New Jersey Statute "Official Misconduct" N.J.S. 2C:30-2.(b) has been violated under same predicate in (M) supra.

(4) Supplemental (pendent) jurisdiction: New Jersey Statute "Crime of Pattern of Official Misconduct" N.J.S. 2C:30-2.(b) has been violated under same predicate in (M) supra.

(N) Deliberate Obstruction of all Written Complaints, Grievances and Out Going U.S. Mail Addressed to Freeholders, ADA and New Jersey Department of Corrections: Defendant Scholtz, Leith, McDonnell and Larkins each had direct notice that (No) complaint written by detainees about horrific cumulative conditions of confinement at "jail" were processed answered or resolved no matter the (form) of the complaint this obstruction denied plaintiff and thousands of detainees at "jail" all meaningful redress; the right to petition government utterly obstructed this violated the United States Constitution First and Fourteenth Amendments.

(O) Protected Speech: Plaintiff had a right to petition for redress through established "jail" regulations: U.S. mail, interdepartment mail, intradepartmental mail, truck mail and grievances. When jail employees obstructed (all) redress to cover up the cumulative conditions of confinement at the "jail" defendant McDonnell reviewed security cameras footage realized plaintiff as becoming successful at preserving evidence of the jail conditions and cover up. Through showing camera the documents seeking redress of said conditions he utilized (official) government forms (disciplinary and pre-hearing confinement) to punish and suppress plaintiff's protected speech by falsely accusing plaintiff of "tampering with a security devise." This violated plaintiff's rights secured by the United States Constitution First and Fourteenth Amendments.

(1) Supplemental (pendent) jurisdiction: is the same cited in (M), (1) supra.

(2) Supplemental (pendent) jurisdiction: is the same cited in (M), (2) supra.

(3) Supplemental (pendent) jurisdiction: is the same cited in (M), (3) supra.

(4) Supplemental (pendent) jurisdiction: is the same cited in (M), (4) supra.

(P) 3 Detainees in cell with less than 9 square feet unencumbered floor space for 20-21 1/2 hours each day: defendants Scholtz, Lanigan, Sessomes, Hicks, Mary Ann O'Brien, Bruce Garganio, Aimee Beigard, Joseph Donnelly and Joanne Schwartz, all had direct knowledge that forcing detainees into a cell (20-21 1/2 hours) each day over extended periods of time with

less than (9) square feet unencumbered floor space (per) detainee
would cause extreme genuine privations and hardships and allowed
this to go on year after year with (deliberate indifference)
to such extreme condition of confinement of detainees awaiting
trial and sentencing, including plaintiff, (did) violate the
established constitutional norms violated clearly established
New Jersey Statutory Law N.J.A.C. 10A:31-3.6(b),(c)and(g). And
failure to stop such condition of confinement, were not
authorized (except in emergency situations) were not
(legitimately) related to "legitimate government purpose" and
if legitimate, were excessive in relation to that government
purpose. This violated clearly understood rights of detainees
not to be detained under such conditions that amounts to be
(punishment) in violation of the United States Constitution
Fourteenth Amendment.

    (1) Supplemental (pendent) jurisdiction: same as in (M),
(1) supra.

    (2) Supplemental (pendent) jurisdiction: same as in (M),
(2) supra.

    (3) Supplemental (pendent) jurisdiction: same as in (M),
(3) supra.

    (4) Supplemental (pendent) jurisdiction: same as in (M),
(3) supra.

    (Q) U.S. Mail Box for outgoing mail: There exists (NO)
compelling government interest not any threat to safety or
security in (continuing to refuse) to provide a proper secure
mail box for (outgoing mail), to avoid continued ongoing practice
at Burlington County Adult Detention Center ("jail") of
obstructing delivery of outgoing mail at "jail" should be placed
into a secured mail box and picked up by specific trained
employee (civilian) who is not a corrections officer. The mail
should be sorted and placed in secure location for delivery
to intended recipients under a secure tamper proof digital camera
monitoring system. This must be done to protect detainees United
States Constitution First and Fourteenth Amendment Rights.

### Relief Requested

    Wherefore, Plaintiff requests that this Honorable Court
and, a jury grant the following relief:

    (A) Declare that defendants Scholtz, Leith, McDonnell,
Larkins, T. Blango, P. Blango, Mary Ann O'Brien, Bruce Garganio,
Aimee Beigard, Joseph Donnelly, Joanne Schwartz, Lanigan, Hicks,
Sessomes, Case and unknown employee violated plaintiff's First,
Eight and Fourteenth Amendment rights as fully described in
the claims for relief sections of this complaining sections
(A)-(P) supra.

(B) declare that secular claims asserted concerning obstruction of outgoing mail violates the First and Fourteenth Amendments of United States Constitution as fully described in claims for relief section of this complaint, section (Q), and issue injunctive relief requested therein.

(C) Declare that secular claims asserted concerning obstruction and deprivation of legal material by New Jersey State Department of Corrections Central Transport Officers transporting detainees from Burlington County Adult Detention Center and other county detention centers to C.R.A.F., is a pattern of constitutionally volitive obstruction and deprivation as fully described in claims for relief (B) and (C) supra and issue an injunction prohibiting such obstruction and deprivation that violates the First and Fourteenth Amendments to the United States Constitution.

(D) Declare the retaliation that Defendant McDonnell took against plaintiff as fully described in claims for relief (H) supra violated the First and Fourteenth Amendments to the United States Constitution.

(E) Declare the disciplinary hearing conducted by defendant P. Blango as described in claims for relief (I) supra to have violated the Fourteenth Amendment to the United States Constitution.

(F) Declare the cover up of and review on appeal of the hearing by Defendant Leith as fully described in claims for relief (J) supra to have violated the Fourteenth Amendment to the United States Constitution.

(G) Declare the illegal disciplinary confinement conditions fostered by Defendants Scholtz, Leith, McDonnell, Larkins, T. Blango and P. Blango as fully described in claims for relief (K) supra to have violated the First and Fourteenth Amendments to the United States Constitution.

(H) Declare the failure to protect by Defendants Lanigan, Sessomes and Hicks as fully described in claims for relief (L) supra to have violated the First and Fourteenth Amendments to the United States Constitution.

(I) Declare the deliberate indifference by Board of Chosen Freeholders Mary Ann O'Brien, Bruce Garganio, Aimee Beigard, Joseph Donnelly and Joanne Schwartz as fully described in claims for relief (M) supra to have violated the First, Eighth and Fourteenth Amendments to the United States Constitution.

(J) Declare obstruction of all written complaints by Defendants Scholtz, Leith, McDonnell and Larkins as fully described in claims for relief (N) supra to have violated the First and Fourteenth Amendments to the United States

31

Constitution.

(K) Declare protected speech retaliatory discipline by Defendant McDonnell as fully described in claims for relief (O) supra to have violated the First and Fourteenth Amendments to the United States Constitution.

(L) Declare 3 detainees in cell 20-21 1/2 hours each day with less than 9 square feet per detainee unencumbered floor space over extended periods of time as fully described in claims for relief (P) supra was due to deliberate indifference by Defendants Scholtz, Lanigan, Sessomes, Hicks, Mary Ann O'Brien, Bruce Garganio, Aimee Beigard, Joseph Donnelly and Joanne Schwartz violated the Fourteenth Amendment to the United States Constitution.

(M) Declare that in each section of claims for relief (A)-(P) where supplemental (pendent) jurisdiction claims that are attached thereto to violate each statute and constitution and civil rights act therein.

(N) Declare that Americans with Disability Act was violated by defendants Scholtz, Leith, McDonnell, Larkins, T. Blango and P. Blango as described in claims for relief (G) supra and that this violated plaintiff's rights under that act.

(O) Declare that New Jersey Civil Rights Act is proper for supplemental (pendent) jurisdiction as asserted throughout the claim for relief in this complaint and that this Civil Right Act permit very similar claim as 42 USC 1983 damages and injunctions, attorney fee and costs may be sought.

(P) Declare that failure to protect by Defendant Lanigan as fully described in claims for relief (A) supra violated the First, Eighth and Fourteenth Amendments to the United State Constitution.

(Q) Award compensatory damages for plaintiff's physical and emotional (mental distress), pain and degradation and punitive damages against each defendant; in the amount of $300,000.00.

(R) Consider class action status for this complaint should this court find plaintiff's assertion of the appropriateness of such status to have merit.

(S) Assign an Attorney to represent plaintiff and or class action due to the extreme impact this case will have for thousands of past, present and future detainees confined at the "jail".

(T) Costs. jury trial requested.

32

(U) Grant plaintiff such other relief as it may appear plaintiff is entitled to.

## Certification

This (33) page complaint supra has been constructed by my own hand (pro se) and I know it to be true and correct to my own knowledge and certify it to be so under 28 USC 1746.

Respectfully Submitted,

Darius Gittens, Pro Se
Dated 1/31/2018
SBI#875223E
South Woods State Prison
215 Burlington Rd. South
Bridgeton, N.J. 08302

The mailing address for the Defendants are as follow:

(1) Burlington County Adult Detention Center: for Defendants Scholtz, Leith, McDonnell, Larkins, T. Blango and P. Blango. 54 Grant St., Mount Holly, N.J. 08060.

(2) New Jersey Department of Corrections: for Defendants Lanigan, Sessomes, Hicks, Case and unknown. Whittlesey Road, P.O. Box 863, Trenton N.J. 08625-0863.

(3) Burlington County Board of Chosen Freeholders: for Defendants O'Brien, Gargino, Beigard, Donnelly and Schwartz, 49 Rancocas Road, Room 123, P.O. 6000, Mount Holly N.J., 08060

33